UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 17-cr-2758-JAH |
|---|---|
| Plaintiff, | |
| v. | **AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| SANDRA MICHELLE POLLEY | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant Sandra Michelle Polley's ("Defendant" or "Ms. Polley") motion to reduce her sentence of imprisonment on the basis of (1) the risk posed to Defendant by the coronavirus disease ("COVID-19") in light of her medical conditions, and (2) her need to serve as her elderly grandmother's caretaker. (ECF No. 41; ECF No. 47). Defendant seeks compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). *Id.* The motion is fully briefed. Having carefully considered the motion, exhibits, and responses, and for the reasons set forth below, Defendant's motion is **GRANTED.**

///

## II.  BACKGROUND

Defendant was convicted of one count of importation of methamphetamine, after which the Court sentenced her to one-hundred (100) months of imprisonment followed by five years of supervised release. (ECF Nos. 15, 18, 35, 36). To date, Defendant has served between fifty-one (51) and fifty-two (52) months.

On November 17, 2020, Defendant filed a motion for compassionate release under 18 U.S.C. §3852(c)(1)(A). (ECF No. 41). On February 16, 2021, Defendant filed a supplemental motion in support of her request for compassionate release. (ECF No. 47). The United States (the "Government") filed a response in opposition to Defendant's motion, (ECF No. 54), to which Defendant replied, (ECF No. 56). The parties also submitted additional documents regarding Defendant's medical records.

## III.  LEGAL STANDARD

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Defendant seeks modification of their sentence under the compassionate release provision of 18 U.S.C. §3582(c)(1)(A)(i). The amendment to §3582(c)(1)(A) provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion, or (2) file a motion after "the lapse of 30 days from the receipt ... of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. §3852(c)(1)(A).

After the Defendant has exhausted their administrative remedies, "a court may modify or reduce the defendant's term of imprisonment 'after considering the factors set forth in [18 U.S.C. §3553(a)]' if the Court finds, as relevant here, that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Rupak*, 2022 WL 65171, at *3 (S.D. Cal. Jan. 6, 2022) (citing 18 U.S.C.

§3582(c)(1)(A)(i)).[1] "As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction." *Rupak*, 2022 WL 65171, at *3 (citing *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020)).

## IV.   DISCUSSION

In analyzing whether Defendant is entitled to compassionate release under 18 U.S.C. §3582(c)(1)(A), the Court will determine whether the following three requirements are satisfied. First, Defendant must show she has exhausted administrative remedies. Second, Defendant must demonstrate that extraordinary and compelling reasons "warrant… a reduction." 18 U.S.C. §3582(c)(1)(A)(i). Third, Defendant must establish that the 18 U.S.C. §3553 (a) sentencing factors "are consistent with" granting a motion for compassionate release. *United States v. Trent,* 2020 WL 11812242, at *2 (N.D. Cal. 2020). If these requirements are met, the Court then considers whether the Defendant is a danger to others and the community.

### A. Exhaustion of Administrative Remedies

A court may reduce a term of imprisonment on a motion from a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. §3582(c)(1)(A).

Here, Defendant filed an administrative request for compassionate release with the Warden on June 4, 2020 (ECF No. 47 at Exh. A) which was denied on June 24, 2020. (*Id.*). Defendant then appealed the denial on June 29, 2020. (*Id.*). Her appeal was denied on July 7, 2020. (*Id.*). Defendant then appealed to the Central office, and that appeal was

---

[1] While any reductions should generally be consistent with applicable policy statements issued by the Sentencing Commission, the Ninth Circuit has held that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant and that "the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant". *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). While U.S.S.G. § 1B1.13 should no longer be treated as binding, it "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *Id.*

denied also. (*Id.*). Defendant's counsel also made an administrative request for compassionate release to the Warden on Defendant's behalf on January 6, 2021. (ECF No. 47 at Exh. B). The Government agrees that Defendant has exhausted her administrative remedies. (ECF No. 54 at 9 n.10). Based on the foregoing, including the Government's concession,[2] the Court finds that Defendant has sufficiently exhausted her administrative remedies.

## B. Defendant Has Demonstrated Extraordinary and Compelling Reasons Warranting Reduction

A court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582 (c)(1)(A). Though the Sentencing Commission's original policy statements are not binding,[3] they are informative[4] and provide illustrative examples of extraordinary and compelling reasons, such as a "serious physical or medical condition", "serious functional or cognitive impairment", or "deteriorating physical or mental health because of the aging process", any of which should "substantially diminish[h] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Rupak*, 2022 WL 65171 at *3 (citation omitted).

---

[2] *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (holding that while "§3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked", the rule is "mandatory in the sense that a court must enforce the rule if a party properly raise[s] it, but the objection may be forfeited if the party asserting the rule waits too long to raise the point") (internal quotations and citations omitted).

[3] Instead of providing a statutory definition for "extraordinary and compelling reasons", Congress "delegated that responsibility to the U.S. Sentencing Commission", which "has been unable to update its definition of 'extraordinary and compelling reasons' following passage of the First Step Act that amended § 3582(c)(1)(A)." *Rupak*, 2022 WL 65171 at *3 (citing *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021)). Because the Sentencing Commission has not issued a revised policy statement after the enactment of the First Step Act, courts have generally held that there is no binding policy statement applicable to defense-initiated motions. *See, e.g., United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).

[4] *See Aruda*, 993 F.3d at 802.

Defendant principally argues that (1) her health conditions, which allegedly results in heighted COVID-19-related risk; and (2) her need to care for her elderly grandmother constitute extraordinary and compelling reasons warranting reduction. (ECF No. 47 at 7). The Government agrees that some, but not all, of Defendant's health conditions constitute an extraordinary and compelling reason but argues that Defendant's need to serve as a caretaker to her elderly grandmother is not a sufficiently extraordinary and compelling reason. (ECF No. 54).

**A. Defendant's Medical Conditions Constitute Extraordinary and Compelling Reasons Warranting Reduction**

Defendant first argues that she has several "underlying medical conditions that heighten her risk with respect to COVID-19, including morbid obesity, heart disease, and hypertension" and that these conditions, both individually and in the aggregate, "increases her risk of experiencing severe effects from COVID-19[.]" (ECF No. 47 at 7). The Government concedes that Defendant's morbid obesity constitutes an extraordinary and compelling circumstance but argues that Defendant's remaining conditions fall short of extraordinary and compelling and are being treated by the BOP. (ECF No. 54 at 11-14).

Taking Defendant's conditions in turn, first, as of January 6, 2021, Defendant was 283.7 pounds with a BMI of 41.9, which meets the definition of morbid obesity. (ECF No. 47 at Exh. J; ECF No. 47 at 8). Defendant notes that obesity is "among the risk factors listed by the CDC for people of any age with underlying medical conditions who are at increased risk of severe illness form COVID-19."[5] Defendant also references a then-recent study on obesity and COVID-19, which "concluded that obesity is a strong, independent risk factor for severe illness from COVID-19 for men *under* the age of 60."[6] The

---

[5] (ECF No. 47 at 8) (citing CDC, *See People with Certain Medical Conditions* (Nov. 2, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity).

[6] (*Id.*) (citing Rabin, R.C., *Obesity Raises the Risk of Death From Covid-19 Among Men*, NY Times (Aug. 14, 2020) available at https://www.nytimes.com/2020/08/14/health/covid-19-obesity.html.).

Government concedes that Defendant's morbid obesity may constitute an extraordinary and compelling circumstance warranting reduction.

While the Court declines to make a blanket ruling that morbid obesity *necessarily* establishes extraordinary and compelling circumstances warranting release, the Court finds that here, ***particularly in light of the Government's concession***, Defendant has sufficiently demonstrated that her morbid obesity, in conjunction with her other medical conditions, rises to the level of an extraordinary and compelling circumstance.

Next, Defendant contends that her heart disease increases her risk from COVID-19. (ECF No. 47 at 10). Specifically, Defendant refers to her enlarged right ventricle, discovered after symptoms like chest pain and shortness of breath necessitated testing. (*Id.*). According to Defendant, her enlarged ventricle is otherwise called "cardiomegaly",[7] which "is a type of cardiomyopathy."[8] Defendant's enlarged ventricle "is a symptom of the heart muscles not working properly" which "can lead to heart failure or cardiac arrest",[9] and the "CDC has designated heart conditions as a top tier risk factor that make an individual more vulnerable to the most serious effects of COVID-19."[10]

The Government characterizes Defendant's condition as "a mildly enlarged right ventricle" and attempts to distinguish it from the heart conditions which have been recognized by the CDC as increasing the risk of severe illness from COVID-19. (ECF No. 54 at 13). The Government also notes that Defendant's "echocardiogram (EKG) showed a normal ejection fraction . . . meaning that her heart pumped out an expected proportion of its contents." (ECF No. 54 at 13).

---

[7] (ECF No. 47 at 10-11) (citing Watson, S., *What Causes an Enlarged Heart (Cardiomegaly) and How's It Treated*?, healthline (Sept. 18, 2018) available at https://www.healthline.com/health/enlarged-heart).
[8] (*Id.* at 10-11) (citing Story, C., *Cardiomyopathy*, healthline (July 27, 2020) *available at* https://www.healthline.com/health/heart-disease/cardiomyopathy#TOC_TITLE _HDR_1.
[9] (*Id.* at 10-11) (citing Watson, *What Causes an Enlarged Heart (Cardiomegaly) and How's It Treated*?).
[10] (*Id.* at 10-11) (citing CDC, *See People with Certain Medical Conditions* (Nov. 2, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity).

     Though the Government attempts to distinguish Defendant's heart condition from the heart conditions identified by the CDC as increasing the risk of severe illness from COVID-19, it states in its own briefing that the third heart condition recognized by the CDC is "cardiomyopathies." (ECF No. 54 at 13) (citation omitted). Defendant alleges that she has cardiomegaly, which she contends is a type of cardiomyopathy, and the Government has provided no persuasive authority to the contrary. (ECF No. 47 at 10-11). Next, though the Government's reference to Defendant's EKG results is ostensibly included to suggest the mild nature of her condition, the Government explains in a footnote that "[i]t is still possible to have heart failure while experiencing a normal ejection fraction." (ECF No. 54 at 13, n.13) (citation omitted). Having said that, especially in light of Defendant's vaccination status, it is not clear whether that heart condition alone rises to the level of an "extraordinary and compelling reason." *See, e.g. United States v. Moore*, 2022 WL 742716, at *3 (D. Idaho Mar. 11, 2022) (rejecting compassionate release motion brought by an inmate with heart and other health conditions, which the court recognized as likely "plac[ing] him at a higher risk of contracting a severe form of COVID-19", but nonetheless denying the motion because the inmate's "vaccination status weighs heavily against a finding of extraordinary and compelling circumstances.").

     Finally, Defendant contends that her hypertension constitutes an extraordinary and compelling circumstance warranting reduction. (ECF No. 47 at 12). The Government disagrees, noting that Defendant has ordinary, or essential, hypertension, not pulmonary hypertension, which several courts have rejected as a basis for compassionate release. (ECF No. 54 at 11-12) (citations omitted).

     The Court agrees with the Government that ordinary hypertension, on its own, does not rise to the level of an "extraordinary and compelling" circumstance. Ordinary hypertension, unlike pulmonary hypertension, is not generally recognized as a basis for compassionate release in this district. *See, e.g.*, *United States v. Ocon*, 2020 WL 5106667 at *3 (S.D. Cal. 2020) (denying compassionate release motion from a 50-year old inmate with hypertension and other medical conditions); *United States v. Vignoni*, No. 18CR1352

(S.D. Cal. 2021) (Dkt. No. 57) ("Ordinary hypertension (high blood pressure) is not one of the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19"). Here, because Defendant does not claim that she suffers from pulmonary hypertension and instead suffers from ordinary or essential hypertension, Defendant's hypertension on its own does not rise to the level of extraordinary and compelling.

*     *     *

While Defendant's vaccination status may counsel against a finding of an extraordinary and compelling circumstance, taking all of Defendant's health conditions together, specifically including her morbid obesity to which the Government concedes, the Court finds that the Defendant has satisfied her burden to demonstrate that extraordinary and compelling circumstances warranting reduction exist.

### B. Defendant's Need to Serve as a Caretaker is Not an Extraordinary and Compelling Circumstance

Defendant separately argues that her need to care for her elderly grandmother, who requires 24-hour care, is an extraordinary and compelling circumstance. (ECF No. 47 at 15). Defendant's grandmother lives alone at eighty-two (82) years old and has significant underlying medical conditions that require live-in care and support. (*Id.* at 16). Defendant contends that she is the only potential caregiver for her grandmother because, while her grandmother has other children and grandchildren, none of them live in proximity to her and all have their own obligations. (*Id.*). In addition, Defendant's grandmother specifically noted that she would not be comfortable with having someone else live with her. (*Id.* at Exh. C).

The Government argues that Defendant's need to serve as a caretaker is not an extraordinary and compelling reason because Defendant's grandmother (1) is not Defendant's spouse or partner, (2) may have access to other potential caregivers, and (3) does not suffer from "the kind of incapacitation envisioned by the Commission." (ECF No. 54 at 14-15).

The Sentencing Commission's policy statement, which is not binding but still informative, provides that "extraordinary and compelling" circumstances exist "if the defendant would be the only available caregiver for an incapacitated spouse." *United States v. Moore*, 2021 WL 4492853, at *2 (D. Alaska Sept. 30, 2021). The policy statement also discusses minor children and registered partners, but, as the Government notes, not grandparents. Nevertheless, because the policy statement is not binding, this is not an automatic bar. *See, e.g., United States v. Menchaca*, 2021 WL 3271315, at *3 (N.D. Cal. July 30, 2021) (explaining that "because the policy statement is no longer binding, the court will not automatically reject defendant's argument", despite the fact that caregiving for incapacitated parents is not expressly discussed in the policy statement).

Next, though Defendant contends that she is the only potential caregiver for her grandmother because her grandmother's other children and grandchildren are otherwise occupied, "the fact remains that defendant is not 'the only available caregiver' as contemplated by the § 1B1.13 policy statement, which the court finds persuasive in this context." *Menchaca*, 2021 WL 3271315, at *3. Defendant has failed to make "a robust evidentiary showing that [D]efendant is the only available caregiver." *United States v. Bragg*, 2021 WL 662269, at *2 (S.D. Cal. Feb. 19, 2021) (citing *United States v. Richardson*, 2020 WL 2200853 at *2 (E.D.N.C. May 6, 2020); *United States v. Cruz-Rivera*, 2020 WL 5993352 at *5 (E.D.P.A. October 9, 2020)).

As to incapacitation, Defendant alleges that her grandmother needs 24-hour care and live-in support, especially in light of her underlying medical conditions, dizziness, and recent "falls from drops in blood pressure[.]" (ECF No. 47 at 15-16). The Government argues that Defendant's grandmother has already seemingly "lived alone for a year following the unfortunate death of her spouse", and "[w]hile this period was doubtless a hardship for Defendant's grandmother, it does not appear to demonstrate the type of incapacitation envisioned by the Commission." (ECF No. 54 at 14). Because Defendant has failed to sufficiently demonstrate that she is the only available caregiver, the Court declines to make a finding with respect to incapacitation, and instead finds that while

Defendant's desire to serve as a caretaker to her grandmother is commendable, it does not rise to the level of an extraordinary and compelling reason warranting reduction.

### C. A Reduction Is Consistent with the Section 3553(a) Factors

If a defendant's motion is supported by a showing of extraordinary and compelling reasons for compassionate release, as is the case here, the defendant must persuade the court that a reduction in sentence would be consistent with the sentencing factors set forth in 18 U.S.C. §3553(a). *See* 18 U.S.C. §3582(c)(1)(A). Those factors include, among others, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; to provide the defendant with needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct. *See* 18 U.S.C. §3553(a).

Defendant contends that her rehabilitation and health weigh in favor of reduction, that the circumstances in her case serve the goal of avoiding unwarranted sentencing disparities, and that a combination of supervised release with drug addiction treatment will adequately protect the public. (ECF No. 47). The Government argues that Defendant's COVID-19 recovery, extensive criminal history, and serious substance abuse history weigh against release. For the reasons discussed below, the Court finds that a reduction is consistent with the §3553(a) factors.

First, as to the nature and circumstances of the offense and the history and characteristics of the Defendant, while the Defendant has an extensive criminal history, by the Government's own admission, "none of [her] prior incidents [are] particularly serious or aggravated standing alone[.]" (ECF No. 54 at 19). Meanwhile, Defendant explains that she has been steadfastly "developing employment skills" as a welder, which have in turn "had a profound effect on her self-image, her belief that she can succeed in what she puts her mind to, and that she has worth and purpose." (ECF No. 47 at 20).

Though the Government believes that Defendant's past is prologue, and that "from a practical perspective . . . the severity and persistence of Defendant's drug abuse history and its relationship to her criminal history . . . suggests that she will have a difficult time abstaining from drugs or crime (or both) upon release", (ECF No. 54 at 19), the Court may consider post-offense developments under §3553 for the most "up-to-date picture" of the Defendant's history and characteristics. *Pepper v. United States*, 562 U.S. 476, 490-91 (2011) (noting that "the extensive evidence of . . . rehabilitation" and "evidence of [Defendant's] conduct since [their] release from custody . . . provides the most up-to-date picture of [Defendant's] history and circumstances") (citations and internal quotations omitted). The Court finds that Defendant has taken significant steps to rehabilitate herself, and her hard work is not lost on the Court. In addition to her professional endeavors, Defendant has also completed other coursework involving drug education and is more aware of what triggers may result in a return to old behavior. (ECF No. 47 at 20-21). She has also maintained a clean record while incarcerated. (*Id.* at 24).

Second, Defendant contends that her health is a §3553 consideration counseling in favor of reduction. (ECF No. 47 at 21). The Government disagrees and argues that while Defendant's "health conditions do present at least one 'extraordinary and compelling' reason' for relief, the force of that reason is undercut by . . . her recent recovery from COVID-19." (ECF No. 54 at 16). The Government also points to the protective effects of vaccines at Defendant's own facility, as they reduce the risk of transmission to the Defendant. (ECF No. 54 at 18).

Defendant provides several explanations for why her health continues to counsel towards release, despite the vaccine and her prior COVID-19 infection: according to Dr. Vijayan, "reinfection is happening and . . . immunity . . . may not last very long", (ECF No. 47. at 22); and according to another doctor, mild initial infections may be followed by a more severe reinfection." (*Id.*) (citation omitted). The Government concedes that, at an academic level, all of this is possible, but that guarding against these possibilities is not the "purpose of compassionate release under the regime set by statute and the Sentencing

Commission." (*Id.* at 17-18). Notwithstanding, the BOP has acknowledged that Defendant has "medical conditions . . . associated with an increased risk of severe illness and/or mortality related to COVID-19", (ECF No. 47 at Exh. J), Defendant's health has deteriorated while incarcerated, and both parties acknowledge that risks remain, though they disagree on the possibility and severity of those risks. On balance, Defendant's health appears to counsel towards reduction.

Finally, the remaining factors are not inconsistent with reduction, or at least not inconsistent enough to outweigh the other factors and counsel against reduction. Accordingly, the Court finds that the §3553(a) factors support reduction.

### D. Danger to the Community

In ultimately deciding whether Defendant should be released under §3582, the Court takes into consideration whether Defendant poses a danger to the community. *See* U.S.S.G. § 1B1.13(2) (Compassionate release is only warranted where "[t]he defendant is not a danger to the safety of any other person or to the community[.]")[11] In making this assessment, courts consider the factors in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the charged offense, (2) the weight of the evidence, (3) the defendant's history, and (4) the nature of any danger to the community or individual. *See* 18 U.S.C. § 3142(g)(1)-(4). After considering these factors, the Court finds that Defendant, taking into account her home confinement and supervised release conditions, is not likely to pose a danger to the community.

///

---

[11] Though the requirement to consider dangerousness typically comes from §1B1.13(2), the Ninth Circuit held in *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) "that there are no applicable Sentencing Commission policy statements for compassionate release motions *filed by a defendant.*" *United States v. Motalebi*, No. 2:17-CR-34 JCM (NJK), 2021 WL 2583548, at *2 (D. Nev. June 23, 2021) (describing the holding in *Aruda*, 993 F.3d at 802). While §1B1.13(2) may no longer be binding, it may still "inform a district court's discretion on compassionate release motions[.]" *Id.* (quotations omitted). And "courts that have found the guideline no longer authoritative still require defendants to demonstrate that they are not dangers to society." *United States v. Baye*, 464 F. Supp. 3d 1178, 1190 (D. Nev. 2020) (citing *United States v. Cantu*, 423 F. Supp. 3d 345, 352–53 (S.D. Tex. 2019)). Accordingly, the Court considers dangerousness here.

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion for reduction of sentence pursuant to the compassionate release provision of §3582(c)(1)(A) is **GRANTED**. It is **ORDERED** that:

1. Defendant shall complete a fourteen (14) day quarantine period prior to her release and obtain a medical clearance from the BOP that she is not infected with COVID-19 prior to her release; and

2. In addition to the special conditions imposed at the time of sentencing, the Court imposes the following, additional special conditions:

    a. Defendant shall reside in a Residential Re-Entry Center (Half-way House) for a period of up to 120 days (non-punitive) after her release from custody until such time as the Probation Officer has determined that Defendant has an approved residence in which to reside;[12]

    b. After the Probation Officer determines that Defendant has an approved residence in which to reside, Defendant shall be subject to home confinement at the approved residence for a period of eighteen (18) months. During the period of home confinement, Defendant shall remain in the approved residence at all times except to engage in employment, visits with defense counsel, religious activities, and medical care for herself and her grandmother. Except for medical emergencies relating to the Defendant or her grandmother, any of the approved absences from home confinement shall be with reasonable notice to the probation officer and travel to and from the activity shall be undertaking along the most direct route without deviation. The Probation Officer shall determine the reasonableness of the notice to be provided. The Probation Officer has the

---

[12] Defendant has indicated that she intends to reside with her grandmother in the case of home confinement. (ECF No. 47 at 23). The Court leaves that determination to the Probation Office.

          discretion to permit the Defendant to leave the residence with conditions at other times;

    c. Defendant shall participate in a Location Monitoring Program selected by the Probation Officer during the period of home confinement. The Defendant shall pay the cost of the Location Monitoring System based upon her ability to pay as determined by the Probation Officer; and

3. Defendant shall serve a three (3) year term of Supervised Release.

**IT IS SO ORDERED.**

DATED: May 19, 2022

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE